IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN FOLKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No. 09-103-GMS |
| ) | |
| CARL DANBERG and PERRY PHELPS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

## I. INTRODUCTION

The plaintiff, John Folks ("Folks"), who proceeds *pro se* and has been granted leave to proceed without prepayment of fees, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Before the court is the motion for summary judgment of the defendants Commissioner Carl Danberg ("Danberg") and Warden Perry Phelps ("Phelps") (together "the defendants") and Folks' opposition thereto.[1] (D.I. 66.) For the reasons that follow, the court will grant the defendants' motion for summary judgment.

## II. BACKGROUND

The complaint alleges that Folks was: (1) subjected to retaliation by Phelps as a result of Folks' participation in Civ. No. 08-539-GMS when he was transferred on October 1, 2008, from the Medium High Housing Unit ("MHU") to the Security Housing Unit ("SHU") and his television was stolen; and (2) Danberg and Phelps denied him migraine and high blood pressure

---

[1]When counsel for the defendants filed the opening brief in support of the motion for summary judgment, he sealed the opening brief in its entirety. (*See* D.I. 66, attachment 3.) After review of the opening brief, the court finds no need to seal it, and will order it unsealed once counsel for the defendants contacts the clerk's office to take the necessary steps to file the opening brief for public viewing.

medication and, at the time the complaint was filed, he had not seen a chronic care physician in over two years for his Hepatitis C condition.[2] (D.I. 1, 3.)

The court construes the facts in the light most favorable to Folks, the non-moving party. The instant complaint was filed on October 7, 2008, after Folks attempted to amend the complaint in *Johnson v. Danberg*, Civ. No. 08-539-GMS. Upon inspection of the amendment, the court determined that the filing comprised a lawsuit, separate and apart from Civ. No. 08-539-GMS, and ordered the clerk of court to open a new case with the amendment serving as the complaint. (*Johnson v. Danberg*, Civ. No. 08-539-GMS at D.I. 29.)

*Johnson v. Danberg*, Civ. No. 08-539-GMS was filed on August 22, 2008 and Phelps was served on March 5, 2009. Folks testified that in approximately June 2008, copies of Civ. No. 08-539-GMS were sent to the business office in preparation for filing in court. According to Folks, the prison was aware of the suit before it was filed "because of people running their mouth." Folks was ultimately dismissed from the lawsuit for failure to prosecute. (D.I. 1, D.I. 66, ex. 1 at 25-26; Civ. No. 08-539-GMS at D.I. 2, 62, 90.)

In April 2008, prior to the filing of Civ. No. 08-539-GMS, Folks was housed in SHU and advised that he would be transferred to MHU, a lesser security housing unit than his current housing assignment, but the classification was deferred. According to Folks it normally does not take six to seven months to transfer an inmate from one place to another, and it was not so much that the transfer took a long time, but that it was deferred. Folks testified that there was no

---

[2] At screening, the court allowed the medical needs claim to proceed inasmuch as Folks alleged that he was not receiving **any** medical care and made that fact known to Danberg and Phelps. (D.I. 39 at 8.) The allegations in the complaint are belied by Folks' deposition testimony that he received medical attention during the relevant time period, but it was not adequate, and a two inch thick exhibit of medical records.

reason for the deferral, and he does not know why the transfer was deferred. An undated memo to Folks states, "for some reason, your case was deferred. I will have Counselor Deitrich do a classification on you to be heard on September 4, 2008." (D.I. 66, ex. 1 at 25, 28, ex. 3.)

When an inmate is housed in a certain area of SHU, he is not allowed to have a personal television in his cell. The television is taken to the prison's property room and the inmate is given thirty (30) days to let the property room officer know where to mail the television. If no forwarding location is provided, the television is donated to a non-profit organization. New television policies became effective October 27, 2008.[3] (D.I. 68, ex.; D.I. 74.)

While housed in SHU, Folks' television was stored in the property room and, on August 19, 2008, it "was all suddenly disposed of." However, it was not until October 1, 2008, when Folks was moved from SHU to MHU that he learned of the television's disposal.[4] A letter from C/O Summer McLaughlin states that Folks refused to comply with a directive regarding the removal of his television from the institution. Folks testified that he "never refused anything." Additionally, he testified that there was no disposal of televisions belonging to other inmates who had them stored in the property room. Phelps states that he had no role in the disappearance of Folks' television. (D.I. 66, ex. 1 at 26-30, exs. 2, 3; D.I. 74.)

When questioned about the retaliation claim, Folks testified that Phelps is "where the retaliatory issue lies at, for some reason," he did not know why, but "that's where [he] feel[s] it

---

[3]The new policy allowed inmates to retain their television while on a lower qualify of life level. In addition, if an inmate currently had a television in storage, he was advised to write to the property officer who would make arrangements for delivery of the television to the cell.

[4]Folks later returned to SHU following a request for a bottom bunk assignment due to medical issues. (D.I. 66, ex. 1 at 40.)

-3-

lies at." (D.I. 66, ex. 1 at 46.)

According to Folks, at the time he filed the complaint, he was not receiving any medical attention for certain ailments and he was not receiving adequate medical care. Folks requested medical care for chronic headaches, back pain, and Hepatitis C. He submitted medical requests and grievances, some of which were refused or denied. Folks assumes that the grievances "stop" with the warden and the commissioner and that they are the ones who "make the final say so." Folks feels that the medical provider at the prison is not responding adequately to his medical needs, but he sued the warden and commissioner because they are in charge of medical. (D.I. 66, ex. 1 at 5-7, 10-11, exs. 5-11.)

At medical, Folks is seen by a physician, but half of the physicians are "just regular doctors" and not "chronic care doctors." Folks generally sees a nurse when rounds are made to disperse medication. At times he has given the nurse sick call clips. (D.I. 66, ex. 4 at
The record reflects that Folks submitted sick call slips in 2005, 2006, 2007, and 2008, all with action taken. He received chronic care treatment during 2006, 2007, and 2008. Folks was examined by a physician on November 9, 2006, who ordered a viral load and other blood work. He was examined on December 4 and 12, 2006. He received chronic care treatment in March, April, October, September, and December 2007. During a chronic care follow-up visit with Dr. Desrosier on September 17, 2007, Folks did not agree with the plan of care. In addition, Folks received chronic care treatment in March, June, and September 2008. (D.I. 66, ex. 1 at 8, 14, 17, ex. 4 at 54-82, 94-119, 120-138, exs. 5, 9.)

Folks suffers from chronic headaches. The record reflects that on February 12, 2007, Dr. VanDusen ordered Folks a 120 days supply of Excedrin migraine medication. On September 18,

2008, a consultation request was submitted for Folks to undergo a CT scan. The scan took place October 28, 2008. In the meantime, Folks was administered Excedrin migraine medication in 2008 from May through October. At the time of his deposition Folks testified that he is now administered Tylenol and not receiving Excedrin because of his Hepatitis C condition, but the Tylenol does not do anything. (D.I. 66, ex. 4, at 20, 232-251, 379-380, ex. 6.)

Folks' blood pressure was monitored in 2006 and 2007. On October 15 and September 17, 2007, Dr. Desrosier ordered blood pressure medication for plaintiff. In addition, medication administration records indicate that he received blood pressure medication throughout 2008. (D.I. 66, ex. 4 at 232-251, 354, 357-58, ex. 8.)

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[5]Rule 56 was revised by amendment effective December 1, 2010. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c) (1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

Defendants move for summary judgment on the grounds that there is no evidence they violated Folks' constitutional rights.

## IV. DISCUSSION

### A. Retaliation

Folks alleges that Phelps retaliated against him as a result of the complaint he filed in Civ. No. 08-539-GMS on August 22, 2008. According to Folks, the retaliation consisted of the delay of a transfer from SHU to MHU and the taking of his television. Phelps moves for summary judgment on the basis that Folks' constitutionally protected conduct occurred after the alleged retaliatory acts and there is no evidence of causal connection between the filing of the complaint in Civ. No. 08-539-GMS and the delay in transfer or the taking of the television.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). To state a claim for retaliation, Folks must demonstrate: (1) constitutionally protected conduct, (2) sufficiently adverse action was taken by prison officials, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). *See also Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

There is no dispute that the constitutional act (i.e., filing Civ. No. 08-539-GMS) Folks contends caused retaliation occurred after the alleged retaliatory acts. The complaint in Civ. No. 08-539-GMS was filed on August 22, 2008 and Phelps was not served until March 5, 2009. The

alleged retaliatory acts occurred in April 2008 when Folks was advised that he would be transferred to a new housing unit, on August 19, 2008, when Folks' television went missing, and during the delay or deferral of the transfer which finally occurred on October 1, 2008. The acts of which Folks complains that occurred prior to the fling of Civ. No. 08-539-GMS, could only be considered retaliatory if Phelps is a soothsayer and could foretell future events, but there is no evidence of this.

Folks feels or believes that somehow Phelps was involved in the loss of his television and the delay in transfer, but nothing in the record supports this belief. Indeed, Phelps states that he had nothing to do with the loss of the television. Moreover, the loss of the television occurred prior to the time the complaint was filed in Civ. No. 08-539-GMS. While Folks believed that the prison was aware of the lawsuit prior to its filing because of people "running their mouth," the record does not support this belief. In addition, there is no indication that Phelps was aware of the lawsuit filed against him prior to the time he was served in March 2009. By this time, Folks has been transferred to MHU. Finally, there is no evidence of record evincing a causal link between the exercise of Folks' constitutional rights and the alleged adverse action taken against him.

No reasonable jury could find in favor of Folks on the retaliation claim. Accordingly, the court will grant defendants' motion for summary judgment on the retaliation claim.

### B. Medical Needs

Folks alleged in his complaint that he was not receiving **any** medical care and made that fact known to Danberg and Phelps. Defendants move for summary judgment on the ground that Folks received medical care during the relevant time period, just not the kind, frequency, or level

he wanted or believed that he needed.

In order to set forth a cognizable medical needs claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

Prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)

(discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

Folks' medical needs claims are specious and his complaint misrepresents the facts known to him. While he alleged in his complaint that he was not receiving any medical care, his deposition testimony and medical record belie his allegations. Folks received repeated medical care and medication for his medical conditions, including chronic care, during the relevant time period. In addition, the record reflects that Folks submitted numerous medical grievances and sick call requests. While it may be that Folks did not agree with the care he received, the record is clear that he received medical care. Finally, absent evidence to the contrary, the defendants, as non-medical prison officials, were justified in believing that Folks was receiving adequate medical care.

No reasonable jury could find that the defendants violated Folks' constitutional rights. For the above reasons, the court will grant defendants' motion for summary judgment.

## V. CONCLUSION

For the above reasons, the court will grant the defendants' motion for summary judgment. An appropriate order will be issued.

_____, 2011
Wilmington, Delaware

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| JOHN FOLKS, | ) |
| --- | --- |
| Plaintiff, | ) ) ) ) |
| v. | ) Civ. Action No. 09-103-GMS ) |
| CARL DANBERG and PERRY PHELPS, | ) ) ) |
| Defendants. | ) |

# ORDER

At Wilmington this 5th day of August, 2011, for the reasons set forth in the Memorandum issued this date;

1. The defendants' motion for summary judgment is **granted**. (D.I. 66.)

2. Counsel for the defendants shall contact the clerk's office to take the necessary steps to file the opening brief (D.I. 66, attachment 3) for public viewing. The opening brief shall be **unsealed** once the necessary steps have been taken by counsel for the defendants and the clerk's office.

3. The clerk of court is directed to enter judgment in favor of the defendants and against the plaintiff and to **close** this case.

_____
CHIEF, UNITED STATES DISTRICT JUDGE